UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 2005-10073-NG

UNITED STATES

V.

MARK D. MATTHEWS

**ORDER ON DETENTION**

ALEXANDER, M.J.

The defendant, Mark D. Matthews, appeared before this Court for a detention hearing on April 7, 2005, pursuant to an indictment charging him with violations of 18 U.S.C. § 922(g)(1) (unlawful possession of a firearm by a felon) and 26 U.S.C. § 5861(d) (unlawful possession of an unregistered firearm). At the hearing the government was represented by Assistant United States Attorney William Connolly and Mr. Matthews was represented by Attorney Paul Markham. The government moved to detain Mr. Matthews pursuant to 18 U.S.C. § 3142 (f)(2)(A) (serious risk of flight).

During the detention hearing, the government offered the credible testimony of Special Agent Sheila O'Hara of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The Court was also aided by a Pretrial Services report ("PTS Report"). Special Agent O'Hara's credible testimony includes the averments set forth below.

The indictment charging Mr. Matthews with unlawful possession of an unregistered firearm and unlawful possession of a firearm by a felon resulted from a Haverhill police department investigation. That investigation, in turn, resulted from an anonymous tip that the Haverhill police received that an individual identified as Mr. Matthews was living in Haverhill, in the Bellvue Avenue area, that he had a firearm, a pick-up truck with Texas license plates, and, furthermore, that he was wanted on charges in Texas. The day after receiving the tip, the Haverhill police went to Bellvue Avenue and saw a pick-up truck matching the description received as part of the tip.

Shortly after the police officers' arrival in the area, a woman exited a residence at 32 Bellvue Avenue with some garbage. The police spoke with her and she identified herself as Crystal Mathews, Mr. Matthews' daughter. She also told the police that she and her father had seen the police looking at her father's truck, and that her father was hiding in a closet in her apartment because he was

wanted in Texas and did not want to be arrested. The police asked Ms. Matthews to return to her residence to see if she could locate a firearm. She did as requested and reported to the police that she did not see a weapon. The police then asked her to go back inside her apartment to retrieve her young daughter. She did so, and the police then escorted her and her daughter to the Haverhill police station.

The police then surrounded Ms. Matthews' residence and called in a SWAT team. The SWAT team attempted to contact Mr. Matthews using both a bullhorn and the telephone, eventually making contact with him by telephone. They asked Mr. Matthews to surrender and he did so. He was thereafter placed under arrest. The elapsed time between when the police first arrived on the scene, between 8:00 a.m. and 9:00 a.m., and the time when the SWAT team was able to make contact with Mr. Matthews, between 2:00 p.m. and 3:00 p.m., was approximately five to six hours.

After Mr. Matthews was arrested, the police secured the premises and located a sawed-off .16 gage shotgun under a bed in the residence. On cross-examination, Special Agent O'Hara testified that she did not believe that the gun had been sticking out from under the bed when the police found it - that is, it was not exposed. Mr. Matthews indicated that his daughter had nothing to do with the firearm and that he had brought the firearm with him from Texas.

Meanwhile, the police also checked the license plates on the pick-up truck and contacted the truck's owner, who lives in Texas. The owner indicated that Mr. Matthews had been using the truck in Texas and had then taken it to Massachusetts. Special Agent O'Hara testified that she believed that it was the impression of the Haverhill police that the truck had been stolen.

Ms. Matthews twice consented to a search of her residence, once after she and her daughter were taken to the Haverhill police station, and again after she returned to her residence following her father's arrest. Special Agent O'Hara testified, on cross-examination, that she did not know the exact times that Ms. Matthews consented to the searches. Special Agent O'Hara also testified on cross-examination that neither she nor any other federal agent was on the scene when the events just delineated transpired. Her testimony, therefore, was based on information that she received from the Haverhill police department.

In that an indictment is extant, probable cause exists to believe that Mr. Matthews committed the offenses with which he is charged. United States v. Vargas, 804 F.2d 157, 162-63 (1st Cir. 1986). Accordingly, the Court turns to the detention calculus.

Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of

conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142 (e); United States v. Montalvo-Murillo, 495 U.S. 711, 716-17 (1990). "With regard to risk of flight as a basis for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings." United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990). The burden of persuasion remains with the Government on the question of flight risk. See DiGiacomo, 746 F. Supp. at 1181 (citing United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir. 1985)). The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. § 3142(g).

First, the Court looks to the nature and circumstances of the offense charged against Mr. Matthews. Although the circumstances presented here are not necessarily portents of immediate danger or use of the firearm in furtherance of other criminal conduct, the unlawful possession of a firearm by a felon and the unlawful possession of an unregistered firearm are violations of the law and of obvious concern to this Court in any situation.

Second, the Court looks to the weight of the evidence against the defendant. As noted previously, there is probable cause to believe that Mr. Matthews

5

committed the offenses with which he is charged.  Vargas, supra.  The indictment and affidavits detail that evidence, which is not insignificant.

The Court's third inquiry relates to the individual defendant, and here has the benefit of a PTS Report prepared by PTS following the detention hearing when Mr. Matthews consented to be interviewed.  According to the PTS report, as well as the testimony of Mr. Matthews' sister Macy Wagner who testified on Mr. Matthews' behalf during the detention hearing, Mr. Matthews came to the Boston-area to see his daughter.  Mr. Matthews had previously been living in Texas, although he told PTS that just before coming to Boston he was without a residence and was living in the woods outside of Austin.  Mr. Matthews' last known address, as provided to PTS, was at the home of another individual, also in Austin.

Mr. Matthews' mother, two of his sisters, and his brother all reside in Texas.  Mr. Matthews' other sister, Ms. Wagner, lives in Melrose, Massachusetts.  Ms. Wagner testified that, until her brother came to the Boston area a few months ago, she saw him about once a year.  She also stated that they have a good relationship and that she was willing to act as his custodian if the Court decided to release Mr. Matthews.

Although the Court appreciates Ms. Wagner's willingness to act as Mr. Matthews' custodian, particularly given that, until recently, she only saw her

brother once a year, Mr. Matthews is, quite simply, not a candidate for release. He has a previous felony conviction, albeit a conviction from 1976, for first degree robbery, and, perhaps more importantly in the current circumstances, a prior conviction, from 1997, for unlawful possession of a firearm by a felon. The government asserted that Mr. Matthews appears to have come to Texas to avoid a warrant or other process in Texas. Although a Massachusetts state charge against Mr. Matthews of being a fugitive from justice has been dropped, the government pointed out that Mr. Matthews has already demonstrated his willingness to flee in the face of criminal charges. Furthermore, Mr. Matthews went to some length to avoid capture in Massachusetts, hiding in a closet in his daughter's residence and refusing to come out of the residence for approximately six hours after police surrounded the residence.

     Defense counsel averred that Ms. Matthews' having to consent twice to police searches of her residence suggests a problem and that he will be filing a motion to suppress. This Court's concern, however, is not with what might happen should Mr. Matthews file a motion to suppress, but whether, in the meantime, Mr. Matthews poses a risk of flight. After considering the evidence before the Court, and the presumption of 18 U.S.C. § 3142(e-f), the Court concludes by a preponderance of the evidence that MARK D. MATTHEWS poses

a serious risk of flight that cannot be vitiated by any condition or combination of conditions of release. Accordingly, the Court ORDERS him detained pending trial. Further, pursuant to 18 U.S.C. §3142(i) it is ORDERED that:

1. The defendant be, and hereby is, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The defendant be afforded reasonable opportunity for private consultation with his counselor; and

3.
4. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility(s) in which the defendant is confined shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Order may be obtained by Mr. Matthews' filing of a motion for revocation or amendment pursuant to 18 U.S.C. § 3145(b).

SO ORDERED.

| | |
|---|---|
| 4/29/05 | /S/ Joyce London Alexander |
| Date | United States Magistrate Judge |